(116 P.3d 36)
No. 93,537

In the Matter of the Marriage of DEBRA L. IWED, *Appellant,* and JOSHUA IWED, *Appellee.*

Opinion filed July 22, 2005.

*Bruce C. Barry,* of Bruce C. Barry, P.A., of Manhattan, for appellant.

*A. Victor Jacobson* and *Susan C. Jacobson,* of Jacobson and Jacobson, Chtd., of Manhattan, for appellee.

Before CAPLINGER, P.J., JOHNSON and HILL, JJ.

JOHNSON, J.: Debra L. Iwed appeals the dismissal of her Kansas child custody case, challenging the Riley County District Court's determination that Kansas did not have jurisdiction because of a preexisting custody proceeding in California. We affirm.

Christopher Iwed was born to Debra and Joshua Iwed in Hawaii on June 30, 2001. In September 2001, the family moved to Kansas. In July 2002, Joshua went to California to care for his grandparents. Debra and Joshua took turns visiting each other periodically. Christopher was in California with Joshua from the end of July to the middle of September 2003, when they came back to Kansas. On January 24, 2004, Joshua returned to California, leaving Christopher in Kansas with Debra. On February 18, 2004, Joshua filed a

petition for divorce and child custody in the Superior Court of Alameda County, California, Case No. RF04141415.

Debra did not participate in the California proceeding. Initially, the California court granted temporary custody of Christopher to Debra. However, after Debra failed to participate in court-ordered custody mediation, the California court awarded sole custody to Joshua on April 13, 2004. On April 15, 2004, Debra filed a petition for divorce and child custody in the District Court of Riley County, Kansas. She attached Joshua's California petition and affidavits, as well as the California court order for the parties to contact Family Court Services for a mediation appointment. Debra obtained ex parte temporary custody and support orders. Joshua filed an answer in the Kansas proceeding.

On September 2, 2004, the Kansas district judge contacted the judge handling the California proceeding. The Kansas judge advised the parties' attorneys that the California judge was taking the position that California had obtained jurisdiction and it was unwilling to relinquish jurisdiction to Kansas. The Kansas court conducted a hearing on October 5, 2004, after which the parties filed briefs with the court. Ultimately, the Kansas court found that California had initially exercised jurisdiction over child custody after finding that Kansas had not been Christopher's home state for the 6 consecutive months prior to Joshua's petition. Relying on the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), as codified in Kansas at K.S.A. 38-1336 *et seq.*, the district court found that Kansas did not have jurisdiction to modify the California order.

Debra's brief presents four issues, although the first two may be distilled into the question of whether the Kansas court had jurisdiction to find that California was not Christopher's home state, *i.e.*, that California did not have jurisdiction to make its custody orders. Debra also challenges the sufficiency of the communication and cooperation between the Kansas and California courts and asserts that she has the right to appeal the Kansas court's ruling.

Joshua failed to adequately address the question of whether we are presented with a final order. See *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 40, 59 P.3d 1003 (2002) (point incidentally

raised but not argued deemed abandoned). We perceive of no credible argument to challenge that a dismissal is an appealable final order. Nothing remained to be decided in the Kansas district court relating to child custody.

After being advised by the Kansas judge that he had communicated with the California judge, Debra chose to participate in an evidentiary hearing and to file briefs with the Kansas court. She did not raise the issues she now asserts regarding compliance with K.S.A. 38-1345 and K.S.A. 38-1347. We need not address Debra's challenge to the sufficiency of the communication and cooperation between the states. See *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003). We do note that most of the provisions in the two statutes utilize the word "may," suggesting discretion on the part of the Kansas judge. The record does not reflect any abuse of that discretion.

Our decision, then, turns on whether Kansas had the jurisdiction to preempt, invalidate, or modify the California custody order. The existence of jurisdiction is a question of law over which this court's scope of review is unlimited. *State v. James*, 276 Kan. 737, 744, 79 P.3d 169 (2003). Further, this case presents questions regarding the UCCJEA, which was adopted by the Kansas Legislature on July 1, 2000. See K.S.A. 38-1336 *et seq*. This court's review of the district court's statutory interpretation is de novo. *McNabb v. McNabb*, 31 Kan. App. 2d 398, 403, 65 P.3d 1068 (2003).

K.S.A. 38-1350 provides:

"Except as otherwise provided in K.S.A. 38-1351 and amendments thereto, a court of this state may not modify a child-custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under subsection (a)(1) or (2) of K.S.A. 38-1348 and amendments thereto, and:

(1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under K.S.A. 38-1349 and amendments thereto, or that a court of this state would be a more convenient forum under K.S.A. 38-1354 and amendments thereto; or

(2) a court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state."

Debra admits that the Kansas court had no authority to modify California's custody order, if California had jurisdiction to enter

the order. She contends, however, that the evidence she presented to the Kansas court in her motion for temporary interlocutory orders and at the evidentiary hearing clearly shows that Kansas was Christopher's home state, not California. See K.S.A. 38-1337(8) ("home state" defined). Debra admits that she did not contest the California court's jurisdiction in the California proceeding.

On appeal, Debra presents us with the facts which she contends support her assertion that Kansas is Christopher's home state. Her arguments are seductive. However, even assuming merit to her contention that Kansas is Christopher's only home state, the Kansas court may not preempt or overrule the California court's findings of fact which were based on Joshua's petition and affidavits.

The UCCJEA prohibits simultaneous custody proceedings in two different states, except for temporary emergency situations. The Kansas court was required to first determine whether a custody proceeding had been commenced in another state having jurisdiction substantially in conformity with the UCCJEA. K.S.A. 38-1353(a). Debra's request to have the Kansas court invalidate the rulings of the California court was an attempt to do the very thing that the UCCJEA was designed to eliminate, *i.e.*, dueling state custody proceedings. *Cf. In re Marriage of Ruth*, 32 Kan. App. 2d 416, 423, 83 P.3d 1248, *rev. denied* 278 Kan. 845 (2004) ("The mere filing of a motion without a jurisdiction determination defeats the purpose of the UCCJEA."). The Kansas district court followed its statutory mandate and appropriately dismissed Debra's custody action in this state.

Affirmed.